UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CARLOS ROBERTS, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | No. 4:16CV538 RLW |
|  | ) |  |
| JASON LEWIS,[1] | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Carlos Roberts for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1) The Petition is fully briefed and ready for disposition. For the reasons set forth below, the Petition will be denied.

### I. Procedural History

Petitioner Carlos Roberts ("Petitioner" or "Roberts") is currently incarcerated at the Southeast Correctional Center ("SECC") located in Charleston, Missouri pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. (Resp't's Ex. H pp. 101-04, ECF No. 5-8) On April 13, 2012, a jury found Petitioner guilty of second-degree murder, armed criminal action, and unlawful use of a weapon. (*Id.* at pp. 93-95) On May 25, 2012, the court sentenced him to two concurrent terms of life imprisonment on the second-degree murder and armed criminal action counts, and a concurrent term of 4 years on the

---

[1] Jason Lewis is now the warden of the Southeast Correctional Center, where Petitioner is housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Jason Lewis' name is substituted as the named respondent in this action. Future pleadings shall reflect this change in the caption.

unlawful use of a weapon count. (*Id.* at pp. 101-04) Petitioner filed a direct appeal, and on December 3, 2013, the Missouri Court of Appeals affirmed the judgment of the trial court.[2] (Resp't's Ex. D, ECF No. 5-4) Petitioner then filed a *pro se* Motion to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 in June, 2014. (Resp't's Ex. M pp. 4-9, ECF No. 5-20) Appointed counsel filed an amended Rule 29.15 motion on October 3, 2014. (*Id.* at pp. 13-29) On November 17, 2014, the motion court denied Petitioner's motion for post-conviction relief. (*Id.* at pp. 30-37) The Missouri Court of Appeals affirmed the judgment of the motion court in a decision dated October 6, 2015.[3] (Resp't's Ex. L, ECF No. 5-19) On April 18, 2016, Petitioner filed the present petition for habeas relief in federal court. (ECF No. 1)

## II. Factual Background[4]

Petitioner Roberts and the victim, V.T. ("Victim") had a common law marriage and raised six children together. Defendant has a low IQ and history of substance abuse. Victim ended the relationship and moved into their adult daughter's apartment in early 2008. Defendant followed the Victim and moved in with his daughter and the Victim, so the Victim left. Defendant directed numerous threats toward Victim after they separated. On March 16, 2008, the daughter's apartment caught fire while her children were there in Petitioner's care. Her son died in the fire, and her daughter was taken to St. Louis Children's Hospital. As the family gathered at the hospital the next day, a witness heard Petitioner demand that Victim return home

---

[2] The opinion of the Missouri Court of Appeals has been published at *State v. Roberts*, 426 S.W.3d 669 (Mo. Ct. App. 2013).
[3] The opinion of the Missouri Court of Appeals has been published at *Roberts v. State*, 471 S.W.3d 781 (Mo. Ct. App. 2015)
[4] The Court sets forth the facts as stated in the Missouri Court of Appeals' opinion. (Resp't's Ex. D)

2

with him. Victim replied that she wanted to stay at the hospital with her daughter and granddaughter. That evening, Petitioner and Victim left the building to smoke. Petitioner wielded a knife and stabbed Victim about her head, neck, and chest. Petitioner also cut his own wrists and throat. When security officers intervened, Petitioner pointed his knife at them until one officer drew his firearm. Police officers responded to the scene and arrested Petitioner, who admitted that he drank alcohol and smoked crack that day. Petitioner stated that he did not remember what occurred but later alleged that another man attacked the couple. The Victim did not survive, and the State charged Petitioner with first-degree murder, armed criminal action, and unlawful use of a weapon.

### III. Petitioner's Claims

In his Petition, Roberts raises four grounds for federal habeas relief. These grounds are as follows:

(1) The evidence was insufficient to find Petitioner competent to stand trial;

(2) The evidence was insufficient to establish the requisite mental state to convict him;

(3) Petitioner was deprived of a fair trial because a juror was distracted; and

(4) Direct appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in refusing to instruct the jury on a lesser included offense of voluntary manslaughter.

### IV. Legal Standards

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or

3

treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers* 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citation omitted).

4

## V. Discussion

In the instant case, Respondent asserts, while Petitioner properly raised all claims in the state court proceedings, they are all without merit.

### A. Claim One

Petitioner first claims the evidence was insufficient to find him competent to stand trial. Petitioner asserts that he presented evidence of a low IQ, indicating mild mental retardation and lack of sufficient reasoning skills to confer with his attorney and assist in his defense. Respondent maintains that the state court determinations that Petitioner was competent to stand trial were reasonable.

The Missouri Court of Appeals addressed Petitioner's claim of incompetency and found:

> First, Defendant contends that the evidence presented in his pre-trial competency hearing was insufficient to support the court's determination that Defendant was competent to stand trial. "The trial court's determination of competency is one of fact and must stand unless there is no substantial evidence to support it." *State v. Anderson,* 79 S.W.3d 420, 433 (Mo. 2002). "In assessing sufficiency of evidence, this Court does not independently weigh the evidence but accepts as true all evidence and reasonable inferences that tend to support the trial court's finding." *Id.*
>
> "A defendant is competent when he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* at 432. As Defendant raised the issue, he bore the burden of proving his incompetence by a preponderance of the evidence. § 522.020.8. To meet that burden, Defendant presented two experts.
>
> Dr. Fucetola, a neuropsychologist, interviewed Defendant and his siblings, reviewed his school and medical records, and administered multiple tests of his intellectual competency. Fucetola concluded that Defendant had an IQ of 66, indicating mild mental retardation, and therefore lacked sufficient reasoning skills to confer with his attorney and assist in his own defense.
>
> Dr. Bruce, a psychologist specializing in trauma recovery, interviewed Defendant, reviewed documents (police reports, a previous psychological evaluation, medical records), and administered several tests assessing his mental health and designed to diagnose psychological disorders. Bruce concluded that

5

Defendant suffered from acute stress disorder at the time of the crime (due to the fire and the resulting loss of his grandson and injury to his granddaughter) and had symptoms of dissociative amnesia, inhibiting his complete recollection of the attack. Bruce opined that Defendant was incompetent to assist in his own defense due to his mental impairment and memory lapse.

The State presented one expert, Dr. Scott, a certified forensic examiner. Scott also interviewed Defendant and reviewed previous tests and other documents (school, medical, and criminal records). Scott agreed with the defense experts' diagnoses of mild mental retardation and acute stress disorder but disagreed as to dissociative amnesia. Scott did not re-administer the standardized tests used by Fucetola and Bruce but relied only on the documents provided to him along with his own detailed interview, which, among other topics, explored Defendant's understanding of the charges against him, the role and function of court personnel, Defendant's legal options, and courtroom behavior. Based on that interview, Scott concluded that, despite Defendant's cognitive deficiencies, he understood the proceedings, could assist in his defense, and thus was competent to stand trial.

On appeal, Defendant submits, essentially, that the trial court believed the wrong expert. Defendant's argument on this point consists of innumerable references to the transcript of defense expert testimony but no Missouri precedent prescribing reversal on similar facts. Simply put, Defendant attempts to re-litigate the record and solicits this court to independently weigh the evidence in contravention of the appellate standard of review. "A mere disagreement among experts does not necessarily indicate error on the part of the trial court. On the contrary, it is the duty of the trial court to determine which evidence is more credible and persuasive." *Anderson*, at 433.

In *Anderson* as in this case, there were two defense experts and one expert for the State. There, the trial court found the defendant competent, and the Supreme Court of Missouri affirmed, holding that the State's lone expert's testimony was adequate substantial evidence to support the court's finding that the defendant was competent to stand trial. Here, the trial court had the additional benefit of a six-person advisory jury to assist in its determination. That process enhances confidence in the decision, and our standard of review mandates deference to the trial court's finding. The testimony of the State's expert, Dr. Scott, constituted adequate substantial evidence to support the court's finding that Defendant was not incompetent to stand trial. Point denied.

*State v. Roberts*, 426 S.W.3d 669, 671–72 (Mo. Ct. App. 2013).

The Court finds that the decision of the Missouri Court of Appeals was not contrary to, nor an unreasonable application of clearly established federal law. In making its determination, the court applied the Supreme Court's clearly established competency standard as set forth in the

6

opinion: "'A defendant is competent when he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.'" *Roberts*, 426 S.W.3d at 671 (quoting *State v. Anderson*, 79 S.W.3d 420, 433 (Mo. 2002)); *accord Cooper v. Oklahoma*, 51 U.S. 348, 354 (1996). "Like other fact determinations, a state court finding that the defendant was competent to stand trial is 'presumed to be correct' in a federal habeas proceeding." *Elam v. Denney*, 662 F.3d 1059, 1064 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)). "[A] competency determination involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'" *Wright v. Bowersox*, 720 F.3d 979, 984 (8th Cir. 2013) (quoting *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir.2003) (internal quotation and citations omitted)). Thus, the state court's conclusion that Petitioner was competent to stand trial is presumptively correct unless Petitioner can demonstrate that the conclusion is not supported by the record. *Id.* Here, Petitioner has failed to make such a showing.

The Court finds the state court competency finding was not an unreasonable determination in light of the evidence presented at the competency hearing. (Resp't's Ex. I, ECF Nos. 5-9 through 5-11) The Petitioner presented two experts, Robert Fucetola, Ph.D., and Steven Bruce, Ph.D. The State presented one expert witness, Richard Scott, Ph.D. The court also granted Petitioner's motion for an advisory jury. After hearing all the evidence and closing arguments from Petitioner and the State, the jury unanimously determined that the case should go forward, as Petitioner did not lack the mental fitness to proceed. (Resp't's Ex. H, p. 45; Ex. I p. 498) In its order denying Petitioner's motion, the court thoroughly addressed the testimony

7

and diagnoses from all three Doctors and concluded that Petitioner "has failed to establish by a preponderance of the evidence that he does not have the present ability to consult with his attorney and understand the proceedings against him." (Resp't's Ex. H pp. 46-50)

While Dr. Scott agreed with Defendant's expert, Dr. Fucetola, in that Petitioner had mild mental retardation, Dr. Scott testified that Petitioner's reasoning was impaired but adequate for the court proceedings. Dr. Scott conducted a detailed interview addressing the pending charges, and Petitioner's responses indicated that he appreciated his options, had not fully lost his memory, and displayed no evidence that he would be unable to work with his lawyer or manage his behavior in court. (Resp't's Ex. H pp. 47-48; Resp't's Ex. I pp. 365-82) Dr. Fucetola testified he disagreed with the State expert Dr. Scott in that Dr. Scott's evaluation did not contain enough information to determine Petitioner had sufficient reasoning to assist his attorney. (Resp't's Ex. I pp. 202-03) Dr. Bruce assessed acute stress disorder from the traumatic event of his grandson's death followed by dissociative symptoms. (*Id.* at 287-89) The jury asked thoughtful questions during the competency hearing, and then determined after carefully weighing the evidence and considering the instructions, that Petitioner was competent to stand trial. The trial court agreed with the jury's determination. The jury and the trial court were not constitutionally required to give Petitioner's expert more weight than the State's expert. *Elam*, 662 F.3d at 1064. Therefore, the Court finds Plaintiff's claim of insufficient evidence to support the court's determination of competency to stand trial lacks merit and will be dismissed accordingly.

### B. Claim Two

Next, Petitioner claims that the trial court erred in denying his motion for acquittal because the evidence was insufficient to establish the requisite mental state when he stabbed his

8

ex-wife. Petitioner contends expert testimony suggested he was not responsible for his actions due to mental retardation and acute stress disorder. The Missouri Court of Appeals addressed this claim and determined:

> For his second point, Defendant asserts that the trial court erred in denying his motion for acquittal because the evidence was insufficient to establish that he possessed the requisite mental state to commit the crime. He insists that other evidence in the record suggests that he wasn't responsible for his actions due to mental retardation and acute stress disorder. Again, our standard of review demands that we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding any evidence and inferences to the contrary. *State v. Frazier,* 404 S.W.3d 407, 413–14 (Mo. App. W.D. 2013). "The credibility and weight of testimony are for the fact-finder to determine." *Id.* "The fact-finder may believe all, some, or none of the testimony of a witness." *Id.* We do not act as a "super juror" with veto powers but instead give great deference to the trier of fact. *Id.*
>
> Section 552.030.1 provides that a person is not responsible for criminal conduct if, at the time of that conduct, he was incapable of knowing and appreciating its nature, quality, or wrongfulness due to mental disease or defect. The statute imposes a legal presumption of sanity that endures throughout the proceedings, and the burden to overcome that presumption by a preponderance of the evidence rests with the defendant:
>
>> All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct.... The issue of whether any person had a mental disease or defect excluding responsibility for such person's conduct is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility.... Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take to the trier of fact.
>
> § 552.030.6. Thus, even when a defendant presents substantial evidence of mental illness, the trier of fact is still free to accept or reject that evidence, and the statutory presumption remains. *State v. Moore,* 264 S.W.3d 657, 662 (Mo. App. E.D. 2008).
>
> Defendant's evidence consisted of expert testimony by Drs. Fucetola and Bruce. As stated above, Fucetola diagnosed Defendant with mild mental retardation. However, Fucetola conceded that this condition didn't preclude an understanding of right and wrong, and he didn't evaluate Defendant's ability to appreciate the wrongfulness of his conduct at the time of the crime. Also mentioned above, Bruce testified that Defendant suffered from acute stress disorder at the time of the crime as a result of the apartment fire and its consequences for his

grandchildren. Bruce further opined that Defendant experienced dissociative amnesia such that he was incapable of knowing what he was doing or that it was wrong. Bruce conceded that Defendant used cocaine and had a blood alcohol concentration of .207 when he was arrested.

In rebuttal, the State presented expert testimony by Dr. Armour, who, after interviewing Defendant and reviewing the pertinent records and reports, opined that Defendant did not suffer from a mental condition relieving him of responsibility for his crime. Armour found significance in Defendant's behavior and statements after the attack. For example, Defendant said he cut himself because he wanted to die for stabbing Victim, indicating an understanding of the nature and wrongfulness of his actions. Further, Armour rejected the diagnosis of acute stress disorder because Defendant's behavior was unrelated to fire (*e.g.*, in contrast to a burn victim's intense fear of and overreaction to fire), and Defendant had functioned normally between the fire and the attack. In short, Armour concluded that Defendant was able to appreciate the wrongfulness of his conduct at the time of the attack.

As in point I, Defendant basically contends that, in submitting the issue to the jury, the trial court believed the wrong expert. Again here, such a claim is simply not cognizable under the appellate standard of review, which bears repeating. "The credibility and weight of testimony are for the fact-finder to determine." *Frazier*, 404 S.W.3d at 414. "The fact-finder may believe all, some, or none of the testimony of a witness." *Id.* We do not act as a "super juror" with veto powers but instead give great deference to the trier of fact. *Id.* Despite Defendant's experts' testimony to the contrary, Dr. Armour's testimony, viewed in a light most favorable to the verdict, constitutes adequate substantial evidence to support a finding that Defendant was not suffering from a mental disease or defect excluding responsibility when he stabbed his ex-wife. Point denied.

*Roberts*, 426 S.W.3d at 672–74.

The Court finds that the decision of the Missouri Court of Appeals was not contrary to, nor an unreasonable application of clearly established federal law. In reviewing a sufficiency of the evidence claim, federal scope of review is extremely limited. *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir. 2005) (citation omitted). The relevant question is not whether this Court believes the trial evidence established guilt beyond a reasonable doubt but "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("it is the

10

responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").

Here, Dr. Michael Armour, testified after reviewing Petitioner's mental health records. (Resp't's Ex. I pp. 1289-1313) Dr. Armour stated Petitioner understood the wrongfulness of what he had done and the harm he inflicted on his ex-wife and was able to provide information about what was going on during the episode where he stabbed his ex-wife and then cut himself. (*Id.* at p. 1304) Further, while Petitioner's mild mental retardation qualified as a mental disease or defect, that did not automatically exclude Petitioner from being responsible for his conduct. (*Id.* at pp. 1305-06) Dr. Armour concluded Petitioner's "level of mild mental retardation does not rise to the level of excluding his ability to know and appreciate the nature, quality, or wrongfulness of his conduct." (*Id.* at p. 1307)

Additionally, Petitioner's expert witness Dr. Fucetola testified Petitioner's mild mental retardation did not automatically make him incapable of appreciating or understanding the wrongfulness of his conduct. (*Id.* at pp. 1117, 1131) Further, Dr. Fucetola acknowledged he did not evaluate Petitioner to determine whether he was capable of appreciating the nature and wrongfulness of his conduct. (*Id.* at p. 1131) Petitioner's other expert, Dr. Bruce, recognized Petitioner had used alcohol and cocaine and had a .207 blood alcohol level on the date of the incident. (*Id.* at p. 1202-07)

"Even where a defendant presents substantial and uncontroverted evidence of a mental disease, a trial court is not required to grant a judgment of acquittal. The trial court is free to accept or reject Defendant's evidence of mental disease or defect." *State v. Moore*, 264 S.W.3d 657, 662 (Mo. Ct. App. 2008). The Court finds despite Petitioner's experts' conclusions to the contrary, a reasonable trier of fact could find Petitioner was not suffering from a mental disease

or defect, and did appreciate the wrongfulness of his actions, at the time he stabbed his ex-wife. Therefore, Petitioner's claim that the evidence was insufficient to establish the requisite mental state lacks merit and will be denied.

### C. Claim Three

Petitioner's third claim asserts juror Jacqueline Bloomfield's presence on the jury deprived Petitioner of a fair trial because she was distracted by concern for her sick mother and was unable to effectively focus on the proceedings. On direct appeal, the Missouri Court Appeals considered this claim and found:

> Finally, Defendant submits that Jacqueline Bloomfield's service on the jury deprived him of a fair trial. Early in *voir dire,* Ms. Bloomfield claimed hardship in that she was responsible for the care of her elderly mother. Later in the process, she disclosed several past experiences with crime and law enforcement. She had witnessed three bank robberies; the worst occurred 12 years earlier in California, where the robber held patrons hostage at gunpoint for 90 minutes. Bloomfield nonetheless indicated that she could be fair. Additionally, Bloomfield's brother-in-law had been a police chief in Florida, but she indicated that she would not give police officers more credibility. Finally, Bloomfield and her son each had been convicted of driving under the influence in California many years earlier (15 and 25 years, respectively). Her son served two years in prison. Bloomfield said that he wasn't treated fairly but she could set aside her feelings. Defendant moved to strike Bloomfield for cause. The State objected. No ruling was made at that time. Later that day, Bloomfield reported that she had secured a friend to care for her mother and wanted to serve on the jury. She told the court, "I could do it [have a friend stay with her mother] the rest of the week if I needed. I want to do both. I want to take care of my mother *but I also want to serve the courts, too.*" During the bench conference on strikes for cause, the State and the court noted that Bloomfield was still present, defense counsel didn't repeat its motion to strike, and ultimately Bloomfield served on the jury.
>
> Defendant doesn't challenge Bloomfield's presence on the basis of her past experiences, which she said she could set aside. Defendant only impugns Bloomfield's ability to focus her attention on the evidence presented despite her concerns for her mother at home. As a preliminary matter, the parties dispute whether this issue was properly preserved for appellate review. Defendant insists that it was, as defense counsel moved to strike and also included this issue in a post-trial motion. If the matter was preserved, then this court reviews for an abuse of discretion. *State v. Deck,* 303 S.W.3d 527, 535 (Mo. 2010). The State asserts that the issue wasn't preserved in that defense counsel neglected to reiterate the motion

12

> to strike during the bench conference. This court may review unpreserved errors affecting a defendant's substantial rights where manifest injustice has occurred. Rule 30.20. Either way—whether we review for an abuse of discretion or plain error—we find no basis for reversal.
>
> Defendant argues that Bloomfield should have been struck for cause because her alleged inability to focus on the proceedings rendered her unqualified to serve. Defendant cites no authority for his proposition that a juror's perceived distractibility is cause to strike. The cases cited in his brief, inapposite here, examine whether jurors' *viewpoints* impeded their ability to find the facts based on the evidence and in accordance with the instructions. Defendant here doesn't question Bloomfield's impartiality but rather her attention span. While we commend Defendant's faith in the concentration skills of other jurors comparatively, we recognize—and infinitely appreciate—that *all* jurors must abandon personal and professional responsibilities to fulfill this critical civic duty. Bloomfield's situation was hardly unique. Bloomfield clearly articulated her desire to serve and an ability to remain impartial, and nothing in the record casts doubt that she satisfied her oath. We find neither plain error nor an abuse of discretion. Point denied.

*Roberts*, 426 S.W.3d at 674–75.

A trial court's determination of a juror's competency to serve is entitled to a presumption of correctness. *Patton v. Yount,* 467 U.S. 1025, 1038-39 (1984). "[T]he determination is essentially one of credibility, and therefore largely one of demeanor. As we have said on numerous occasions, the trial court's resolution of such questions is entitled, even on direct appeal, to 'special deference.'" *Id.* at 1038. "'Under 28 U.S.C. § 2254(d), a habeas court must, of course, afford this determination the presumption of correctness due a state court's factual findings.'" *Reynolds v. Russell*, No. 4:14 CV 1060 CDP, 2015 WL 7273322, at *5 (E.D. Mo. Nov. 18, 2015) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1326-27 (8th Cir. 1993)).

Here, juror Bloomfield ("Bloomfield") indicated she lived with her disabled mother, but a friend was able to watch her mother during the trial if necessary. She stated, "I could do it the rest of the week if I needed. I want to do both. I want to take care of my mother but I also want to serve the courts, too, so." (Resp't's Ex. I p. 793-94) The Missouri Court of Appeals noted

13

Petitioner did not challenge Bloomfield's impartiality but merely her attention span. The record shows Bloomfield was unequivocal in stating she wanted to perform her civic duty. "A state trial court's rulings concerning a juror's fitness to serve are routinely upheld, unless there is no fair support in the record for the ruling, based on the appropriate federal standard." *Pruett v. Thompson*, 771 F. Supp. 1428, 1454 (E.D. Va. 1991). Petitioner has not presented clear and convincing evidence that Bloomfield was unable to fulfill this duty. Therefore, the Court must accept the state court's factual finding that Bloomfield was fit to serve on the jury. *See, e.g., Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Thus, the Court finds that Petitioner's third ground for habeas relief lacks merit and will be denied on that basis.

## D. Claim Four

Petitioner's final claim alleges appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter. Petitioner asserts there was evidence of sudden passion, and had counsel raised the issue, a reasonable probability exists that the appellate court would have granted a new trial. Petitioner raised this claim in his motion for post-conviction relief and on post-conviction appeal, and the Missouri Court of Appeals found:

> "The crime of voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused under the influence of sudden passion arising from adequate cause[.]" *State v. Redmond*, 937 S.W.2d 205, 208 (Mo. banc 1996) (citation and quotations omitted). "'Sudden passion' is defined as 'passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation.'" *Zink v. State*, 278 S.W.3d 170, 183 (Mo. banc 2009) (quoting § 565.002(7) RSMo 2000). As noted, this "sudden passion" must arise from "adequate cause," which is defined as "'cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially

14

impair an ordinary person's capacity for selfcontrol[.]'" *Zink*, 278 S.W.3d at 183 (quoting § 565.002(1)).

"A court must instruct on a lesser-included offense only if the evidence established a basis for acquittal of the greater offense and conviction of the lesser-included offense." *State v. Hill*, 17 S.W.3d 157, 159 (Mo. App. E.D. 2000). A defendant is entitled to an instruction on the lesser-included offense if it is "is supported by the evidence and any inferences which logically flow from the evidence." *State v. Hopson*, 891 S.W.2d 851, 852 (Mo. App. E.D. 1995).

Here, the record does not logically support a finding of sudden passion arising from adequate cause. This is because there is no evidence that Victim engaged in conduct constituting "adequate cause" that would have provoked Movant to act with "sudden passion." No direct or circumstantial evidence indicates that Victim, for example, at the time of the stabbing, in any way threatened Movant through the display of a deadly weapon or otherwise threatened Movant through physical contact. *Compare, e.g., Redmond*, 937 S.W.2d at 208–09 (affirming conviction for voluntary manslaughter where victim threatened the defendant with a gun); *State v. Lowe*, 318 S.W.3d 812, 816 (Mo. App. W.D. 2010) (affirming conviction for voluntary manslaughter where testimony showed that victim had started a fight with the defendant before the defendant struck victim with a hammer, killing him); *State v. Henderson*, 311 S.W.3d 411, 412 (Mo. App. W.D. 2010) (affirming conviction for voluntary manslaughter where victim attempted to run-over the defendant with his truck, at which point the defendant shot at the truck, killing victim).

Movant relies on the testimony of Dr. Amour, but even assuming his testimony constituted probative evidence of the events as opposed to mere speculation, his theories about what may have happened would not have supported submission of the voluntary manslaughter instruction. Mainly, in the theoretical scenarios posed by Dr. Amour, either Victim's statements to Movant caused the stabbing or Movant's grief over his grandchildren in conjunction with the fact that Victim was leaving him, constituted the alleged "adequate cause" provoking Movant's "sudden passion." However, words alone, no matter how offensive, are insufficient to show adequate cause. *State v. Avery*, 120 S.W.3d 196, 205 (Mo. banc 2003). Moreover, to the extent that Victim's decision to leave Movant allegedly constituted adequate cause, Movant's knowledge of that fact occurred well before the stabbing. "[P]rior provocation can never be the sole cause of sudden passion...." *Id.* And, Movant's grief over his grandchildren does not constitute sudden passion arising from adequate cause, given that the provocation must be directly caused by the Victim. *Zink*, 278 S.W.3d at 183.

Having reviewed the record, we conclude that the evidence at trial did not support submission of the lesser-included offense of voluntary manslaughter. Consequently, the trial court did not err by refusing to submit the lesser-included offense instruction and, accordingly, appellate counsel's decision not to claim

15

> instructional error on appeal was reasonable trial strategy. Counsel's performance is not defective for failure to raise a non-meritorious claim. *See Mason v. State,* 189 S.W.3d 708, 710 (Mo. App. W.D. 2006) ("We will not convict trial counsel of ineffective assistance for failing to do that which would have been a futile act." (citation and quotations omitted)). Under these circumstances, Movant has failed to adequately allege unrefuted facts that counsel's decision was not a matter of trial strategy or that counsel "failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Mallow,* 439 S.W.3d at 770 (citation and quotations omitted). It follows that no reasonable probability exists that the outcome of the appeal would have been different had counsel raised the claim. *See id.*

*Roberts v. State*, 471 S.W.3d 781, 784–86 (Mo. Ct. App. 2015).

To establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* at 694; *Bucklew*, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016 (citation omitted). The question of whether counsel's performance prejudiced the trial need not be addressed if counsel's performance was not deficient; conversely, a court need not reach the question of deficient performance where a petitioner has failed to show prejudice. *Green v. Steele*, No. 4:04-CV-0610 CEJ TCM, 2007 WL 2199644, at *10 (E.D. Mo. July 27, 2007) (citations omitted).

As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in *Strickland*." *Id.*; *see also Bucklew*, 436 F.3d at 1016 (where state court correctly identifies *Strickland* as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of the evidence presented.").

Here, Petitioner has failed to demonstrate that direct appeal counsel's performance was deficient and prejudiced the defense. "There is 'no obligation to instruct the jury on a lesser-included offense unless a basis exists for acquitting the defendant of the greater offense charged and convicting him of the lesser-included offense.'" *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) (quoting *Arnold v. State*, 303 S.W.3d 567, 569 (Mo. Ct. App. 2009)). Here, the Missouri Court of Appeals reasoned there was no evidence that Victim engaged in conduct constituting adequate cause that would have provoked Petitioner to act with sudden passion because no evidence indicated that Victim threatened Petitioner, and the act of Victim leaving Petitioner occurred well before the stabbing. *Roberts*, 471 S.W.3d at 785. "Direct appeal counsel is not ineffective under *Strickland* for failing to raise a claim for which a petitioner could not have obtained relief." *Walker v. Hurley*, No. 4:14CV00321 AGF, 2017 WL 1078046, at *9 (E.D. Mo. Mar. 22, 2017); *see also Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002) (finding petitioner's appellate counsel was not ineffective for failing to raise a claim where petitioner could not obtain relief had the claim been raised).

Further, "[t]he failure of appellate counsel to brief every possible issue on appeal does not render direct appellate counsel ineffective." *Messier v. Steele*, No. 14-3164-CV-S-GAF-P, 2014 WL 4930653, at *6 (W.D. Mo. Oct. 1, 2014) (citing *Whitmill v. Armontrout*, 42 F.3d 1154, 1156 (8th Cir.1994)). "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). As previously stated, direct appeal counsel is not ineffective for failing to raise a meritless issue on appeal. *Grubbs v. Delo*, 948 F.2d 1459, 1464 (8th Cir.1991). The Court finds that the decision of the Missouri Court of Appeals that the trial court did not err by refusing to submit the lesser-included offense instruction and, accordingly, appellate counsel's decision not to assert instructional error on appeal was reasonable trial strategy, was neither contrary to nor an unreasonable application of *Strickland*. Thus, the Court finds that Petitioner has failed to demonstrate that trial counsel was ineffective, and this ground is denied on the merits.

Accordingly,

**IT IS HEREBY ORDERED** that that the Petition of Carlos Roberts for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accordance with this Order is entered on this same date.

Dated this 17th day of September, 2019.

                                                             *Ronnie L. White*
                                                             **RONNIE L. WHITE**
                                                             **UNITED STATES DISTRICT JUDGE**